UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

PETER SHOWERS,                               :

                         Petitioner,          :        **REPORT AND**
                                                       **RECOMMENDATION**
              - against -                     :        **TO THE HONORABLE**
                                                       **WILLIAM H. PAULEY III**

GARY GREEN, Superintendent,                   :
Great Meadow Correctional Facility,                    05 Civ. 0179 (WHP)(FM)
                                              :
                         Respondent.          :

---------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

              In this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section

2254"), petitioner Peter Showers ("Showers") challenges his conviction on one count of

Robbery in the Second Degree following a jury trial in Supreme Court, Bronx County,

before the Honorable Lawrence H. Bernstein.  On May 11, 2000, Showers was sentenced,

as a second felony offender, to a twelve-year prison term.  In his petition, Showers

contends that the prosecutor peremptorily challenged a prospective juror on racial

grounds in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  For the reasons that

follow, I recommend that the petition be denied.  I further recommend that a certificate of

appealability not be issued because Showers has failed to make the substantial showing of

the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2).

II.    <u>Background</u>

    A.    <u>Jury Selection</u>

During the course of jury selection, the prosecutor and Showers' defense counsel each made two <u>Batson</u> applications which were denied.  (<u>See</u> T. 103-04, 147-52, 266-67).[1]  Although Showers' petition focuses on the peremptory challenge exercised by the People with respect to one prospective juror, Rhonda Brown ("Brown"), some understanding of the progress of jury selection is necessary to place Justice Bernstein's ruling in context.  Accordingly, I have described the jury selection process in some detail.

At the end of the first round of jury selection, the prosecutor made the first <u>Batson</u> motion based on Showers' exercise of three peremptory challenges to "remove white jurors."  (<u>Id.</u> at 103).  Justice Bernstein denied that motion, stating:  "I don't find three jurors to be excused [sufficient] at this point to make a prima-facie case" under <u>Batson</u>.  (<u>Id.</u>).

After the second round of jury selection, Showers' counsel made a <u>Batson</u> application based on the prosecutor's use of three out of her four peremptory challenges in the first two rounds to excuse African-American jurors.[2]  (<u>Id.</u> at 147).  At that stage, the

    [1]    "T." refers to the trial transcript submitted by the respondent.  The respondent has submitted more than one copy of certain portions of the transcript.  Transcript pages cited in this Report and Recommendation which are missing from one copy of the transcript may be found in the other copies.

    [2]    Counsel agreed that the fourth prospective juror challenged by the prosecutor was not an African American.  (<u>See</u> T. 151).

trial court found a <u>prima</u> <u>facie</u> case of racial discrimination by both sides and instructed

counsel to provide reasons for their challenges.  (<u>Id.</u> at 148).  After defense counsel

explained the rationale for his challenges, Justice Bernstein found that "all the reasons

given are race neutral reasons and are not under <u>Batson</u> and [that] those challenges are

acceptable."  (<u>Id.</u> at 151).

 Turning to the People's challenges, the prosecutor stated that she

challenged (1) Keisha Anderson because "she was arrested for disorderly conduct and . . .

is a social worker," (2) Danielle Smith because she demanded "one hundred percent

certainty" of guilt before she would vote to convict, and (3) Bruce Jones because he

concurred with another prospective juror's opinion that "black men are victimized in the

system."  (<u>Id.</u> at 151-52).  The trial court found these reasons to be race neutral and

therefore denied the defense's application.  (<u>Id.</u>).

 During the fourth round of jury selection, Justice Bernstein asked

prospective juror Eric Rodriguez ("Rodriguez"), a police officer who had been on the

force for over three years, "Do you believe you can sit fairly or do you feel you'd be sort

of leaning towards the prosecution?"  (<u>Id.</u> at 220).  After Rodriguez responded somewhat

cryptically, "Yeah," the judge at first indicated that he would excuse Rodriguez, but

another prospective juror, Louisa Suarez interjected, "No, he doesn't want to be excused."

(<u>Id.</u> at 210, 220).  The following exchange then took place:

THE COURT: . . . . I'll ask you again:  If you're
     selected, would you in any way sort of

|              |                                                                                           |
|--------------|-------------------------------------------------------------------------------------------|
|              | feel that you have to favor the prosecution against [the] defense?                         |
| [RODRIGUEZ]: | No.                                                                                        |
| THE COURT:   | Can you judge the credibility and accuracy of a police officer without getting personally involved? |
| [RODRIGUEZ]: | Yes.                                                                                      |

(Id. at 220-21). Rodriguez consequently was retained. (Id. at 221).

During counsels' subsequent voir dire of the jurors in this round, Showers'

attorney asked Rodriguez whether he might feel pressure from fellow police officers to

"let the D.A. slide a little with her burden." This led to the following exchange:

|              |                                                                                           |
|--------------|-------------------------------------------------------------------------------------------|
| [RODRIGUEZ]: | No, I'm pretty sure I'm not pressured.                                                    |
| [COUNSEL]:   | You're pretty sure there would be pressure or not pressure?                               |
| [RODRIGUEZ]: | Would be pressure.                                                                        |
| THE COURT:   | . . . . Are you saying you would be pressured to vote with the People as a juror?         |
| [RODRIGUEZ]: | I have no problems following the case –                                                   |
| THE COURT:   | I asked you that earlier in the day. You said you had no problem.                         |
| [RODRIGUEZ]: | I got no problem.                                                                         |
| THE COURT:   | Okay.                                                                                     |

4

| [COUNSEL]: | You said you wouldn't have a problem, but you just indicated there would be pressure from the guys you work with, right? |
|---|---|
| [RODRIGUEZ]: | There might. |
| [COUNSEL]: | And if you felt pressure from those guys would that cause you to side with the D.A.? |
| [RODRIGUEZ]: | I really don't know. |
| . . . . | |
| THE COURT: | Then I'll excuse you. I asked you that earlier in the day. We wasted a lot of time. Step out, please, officer. Step out. |

(Id. at 263-65).

Immediately after Rodriguez was excused, the parties exercised their next round of peremptory challenges. (Id. at 265-68). When the prosecutor peremptorily challenged Brown, who is an African-American female, defense counsel renewed his Batson application. This led to the following colloquy between Justice Bernstein and the prosecutor:

| THE COURT: | Why did you challenge Miss Brown? |
|---|---|
| [PROSECUTOR]: | Because when they were discussing – there was nothing on the record, but when the officer left she was saying how messed up it was [that] he tried to stay on the jury, that's messed up, that's messed up. That's why. The jurors were having a conversation amongst themselves. |

5

| | |
|---|---|
| THE COURT: | I don't see that as a race neutral reason. It's a race neutral reason, but it doesn't make any sense. |
| [PROSECUTOR]: | She was responding to the police officer answering the questions that he could be fair and then ultimately saying he couldn't be fair. |
| THE COURT: | What was she saying? |
| [PROSECUTOR]: | That's messed up, that's messed up, he was trying to stay on the jury. |
| THE COURT: | What does that mean to you? |
| [PROSECUTOR]: | That a police officer shouldn't be on the jury. |
| THE COURT: | Why should you challenge her? We all agree it would be bad for a police officer to be on the jury. |
| [PROSECUTOR]: | No, we don't. |
| THE COURT: | Well, this officer said he couldn't be fair. |
| [PROSECUTOR]: | Ultimately, after repeated needling, yes. |
| THE COURT: | I don't see that as – |
| [PROSECUTOR]: | I think that's race neutral, with all due respect. |
| THE COURT: | All right, I'll grant it. You have an exception. |

(Id. at 266-67).

After the court made this ruling, Showers protested, "They promised me a fair trial and I'm not even getting it . . . . The problem is [that the prosecutor is] taking that person off because that's messed up. Nobody witnessed that." (Id. at 268). Following some further discussion, Showers similarly interjected that "[the prosecutor is] knocking all the black people off. That's not fair." (Id. at 270).

After the fifth round of jury selection, defense counsel renewed his Batson application as to Brown and the other African-American jurors excused by the defense, arguing that the prosecutor's race-neutral justification for each challenge was pretextual. (Id. at 284-85). As counsel explained, "[o]ut of the challenges exercised by the D.A. in this case, I believe twelve of them have been either youngish black males, youngish female blacks. My client is a young male black." (Id. at 284-85). After the prosecutor provided race-neutral justifications for her challenges of four African-American jurors specifically cited by defense counsel, the prosecutor returned to her decision to exercise a peremptory challenge with respect to Brown:

> [PROSECUTOR]: And revisiting Rhonda Brown, Your Honor, [defense counsel] . . . originally said I was excluding young blacks. If you look at who has been picked, I have not been systematically excluding blacks. I have really good reasons. If they were white, I would throw them off for the very same reasons I'm articulating for the court today. Any white juror who

had a brother convicted of robbery I
would knock off.[3]

THE COURT:  I stick with the opinion as to the lady,
Rhonda Brown.

[PROSECUTOR]:  Defense counsel originally stated that I
was systematically excluding young
blacks.  I don't think that is accurate.
Rhonda Brown isn't necessarily that
young, and I believe as an officer of the
court I am representing to you what I
observed off the record.

(Id. at 286-87).

Justice Bernstein did not rule on Showers' renewed Batson motion in its

entirety.  Following a three-day weekend recess, however, the Justice stated:

I want the record to reflect when I asked [the prosecutor]
Thursday for her reasons after I found a prima-facie case for
defense counsel's motion on a Batson proceeding, I found
that her reasons were reasons that were race neutral and I also
meant class neutral, because that was the motion made, both
race and class, and what I didn't express, which I would like
to express now, implied in my decision but I want to express
it, I found her reasons were not pretextu[]al.

(Id. at 292-93).  After the court noted that Showers would have "an exception to that,"

defense counsel responded, "The very, very last one, which is the one we argued about is

Miss Brown, that's what I took exception to last week."  (Id. at 293).

_____

[3]        Brown never indicated that she had a brother who had a robbery conviction.
Rather, it was Richard Logue, another African-American prospective juror peremptorily
challenged by the prosecutor, who had disclosed during voir dire that his brother had been
incarcerated in connection with a robbery.  (See T. 218, 231-32, 270).

B.     Subsequent Proceedings

On March 17, 2000, the jury convicted Showers of Robbery in the Second

Degree.  (Id. at 727).  Thereafter, on May 11, 2000, Justice Bernstein sentenced Showers,

as a second felony offender, to a definite term of imprisonment of twelve years.  (See

Affirm. of Ass't Dist. Att'y Christopher J. Blira-Koessler, dated May 12, 2005, ¶ 5).

Showers appealed his conviction to the Appellate Division, First

Department, arguing, among other things, that the trial court failed to make the required

inquiry into whether the race-neutral reason given by the People for challenging Brown

was pretextual.  (See id. Ex. 1).

On December 19, 2002, the Appellate Division unanimously affirmed

Showers' conviction.  People v. Showers, 300 A.D.2d 151 (1st Dep't 2002).  With respect

to Showers' Batson claim, the Appellate Division held:

> Defendant's application pursuant to Batson v. Kentucky was
> properly denied.  The court made a sufficient inquiry into
> whether the race-neutral reason offered by the prosecutor for
> challenging the panelist at issue was pretextual.  Although the
> court may have initially expressed some skepticism about the
> offered race-neutral reason, the court made further inquiries
> of the prosecutor and satisfied itself that there was no racial
> discrimination.  The record supports the court's implicit
> findings that the prosecutor had overheard the panelist utter a
> comment that could be construed as hostile to police officers,
> and that this race-neutral reason for challenging the panelist
> was not pretextual.  These findings are entitled to great
> deference.

Id. at 151 (citations omitted).

Following this decision, Showers sought leave to appeal to the Court of Appeals, which was denied on October 10, 2003. People v. Showers, 100 N.Y.2d 645 (2003).

On January 7, 2005, Showers filed a timely petition for a writ of habeas corpus, together with a supporting memorandum of law. (Docket Nos. 2-3). On February 4, 2005, Your Honor referred the matter to me to report and recommend. (Docket No. 5). On May 12, 2005, the respondent filed opposition papers. (Docket No. 7). On June 14, 2005, Showers filed a reply memorandum. (Docket No. 8).

III.    Discussion

A.    Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, provides in part that:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court

shall not be granted with respect to any claim that was
adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1) resulted in a decision that was <u>contrary to</u>, or involved an
<u>unreasonable application of</u>, clearly established Federal law,
as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in <u>Jones v. Stinson</u>, the Supreme Court has

"construed the amended statute so as to give independent meaning to 'contrary [to]' and

'unreasonable.'"  229 F.3d 112, 119 (2d Cir. 2000).  "Under the 'contrary to' clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than [the] Court has on a set of materially indistinguishable facts."

<u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application"

clause, a federal habeas court should "ask whether the state court's application of clearly

established federal law was objectively unreasonable."  <u>Id.</u> at 409.  This standard does not

require that reasonable jurists would all agree that the state court was wrong.  <u>Id.</u> at 409-

10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable

to all reasonable jurists.'"  <u>Stinson</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d

100, 109 (2d Cir. 2000)).

Section 2254(d)(2) further authorizes the federal courts to grant a habeas

writ when a claim considered on the merits in state court "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." To the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

As discussed below, because Showers has failed to show that his conviction resulted from constitutionally infirm proceedings in state court, he is not entitled to federal habeas relief.

B.     Batson Claim

In Batson, the Supreme Court held that a state's ability to exercise peremptory challenges to strike jurors is subject to the Equal Protection Clause, and that a prosecutor therefore may not "challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson, 476 U.S. at 89. The Court also established a three-step, burden-shifting process for determining whether a party has used its challenges in an unconstitutionally discriminatory manner. Id. at 96-98. The Second Circuit has described this familiar process as follows:

> First, the moving party – i.e., the party challenging the other
> party's attempted peremptory strike – must make a prima
> facie case that the nonmoving party's peremptory is based on
> race. Second, the nonmoving party must assert a race-neutral

> reason for the peremptory challenge. The nonmoving party's
> burden at step two is very low . . . . [A]lthough a race-neutral
> reason must be given, it need not be persuasive or even
> plausible. Finally, the court must determine whether the
> moving party carried the burden of showing by a
> preponderance of the evidence that the peremptory challenge
> at issue was based on race.

Harris v. Kuhlmann, 346 F.3d 330, 343 (2d Cir. 2003) (alteration in original) (quoting

McKinney v. Artuz, 326 F.3d 87, 97-98 (2d Cir. 2003)).

Showers contends that (1) the People failed to meet their "step two" burden

of proffering a racially neutral reason for their challenge of Brown, and (2) the trial court

failed to fulfill its "step three" duty to determine whether that challenge was racially

motivated. (Pet.'s Mem. at 11). Although the striking of even one prospective juror for a

discriminatory purpose is unconstitutional, Walker v. Girdich, 410 F.3d 120, 123 n.3 (2d

Cir. 2005), neither of Showers' contentions with respect to juror Brown withstands

scrutiny.

1.     Race-Neutral Explanation

Showers first contention is that the prosecution failed to meet its step two

burden by establishing that Showers had in fact made an off-the-record comment,

indicating "That's messed up, that's messed up," in response to prospective juror

Rodriguez's statements that he could be fair and impartial. (Pet.'s Mem. at 11-12).

Citing People v. Rodriguez, 211 A.D.2d 275, 279 (1st Dep't 1995), Showers argues that

the prosecution's burden at this stage is to "come forward with evidence supporting its

position." (Pet.'s Mem. at 11-12 (emphasis added); Pet.'s Reply at 5).

In <u>Rodriguez</u>, the prosecution's purportedly race-neutral justifications for exercising a peremptory challenge were that the prospective juror had regular contact with police officers and might favor the defendants because both he and they were young. <u>Rodriguez</u>, 211 A.D.2d at 278-79. The Appellate Division concluded that these justifications were not credible because (a) the prospective juror's regular contact with police would ordinarily be viewed as favorable by the prosecution, (b) the prosecution failed to establish the prospective juror's purported "youth" for the record, and (c) "neither of the defendants . . . was so young as to make him particularly likely to benefit from feelings of fellowship experienced by young jurors." <u>Id.</u> at 278-79.

To the extent that the second of the reasons cited by the Appellate Division in <u>Rodriguez</u> can be read to require a prosecutor to adduce <u>evidence</u> in state court in response to a <u>Batson</u> motion, the decision appears to go well beyond what <u>Batson</u> actually requires. Indeed, Showers has not cited any federal case (much less any decision of the United States Supreme Court) that would require such an extensive showing. Accordingly, even if it arguably may be the law of the First Department that a <u>Batson</u> second-step inquiry requires the nonmovant to adduce evidence of a nondiscriminatory rationale for its conduct, Showers has not established that the failure to do so is a violation of clearly established federal law. Rather, in <u>Batson</u>, the Supreme Court merely held that the non-moving party's burden is to "come forward with a neutral <u>explanation</u> for challenging black jurors." <u>Batson</u>, 476 U.S. at 97 (emphasis added). The Supreme Court also recognized that jury selection practices varied markedly from jurisdiction to

jurisdiction and, consequently, expressed no views as to how best to implement its

holding. Id. at 99 n.24.

In this case, after the prosecutor first reported Brown's off-the-record

comments, the following colloquy took place:

> THE COURT: What does that mean to you?
>
> [PROSECUTOR]: That a police officer shouldn't be on the jury.
>
> THE COURT: Why should you challenge her?  We all agree it would be bad for a police officer to be on the jury.
>
> [PROSECUTOR]: No, we don't.

(T. 267).  As this exchange suggests, the prosecutor evidently believed that Brown had a

bias against police officers and therefore would not be favorably disposed to the People.

Whether the prosecutor was right or wrong, the concern that she expressed obviously had

nothing whatsoever to do with race.  Thus, her decision to strike Brown was, on its face, a

valid, race-neutral use of a peremptory challenge.

Taking issue with the prosecutor's analysis, Showers argues that Brown's

"confusion or displeasure . . . did not indicate that [she] could not be an impartial juror."

(Pet.'s Mem. at 13).  However, at the step two stage, the prosecution's only burden is to

put forward a race-neutral explanation.  "[T]he prosecutor's explanation need not rise to

the level justifying exercise of a challenge for cause."  Batson, 476 U.S. at 97; see also

Hernandez v. New York, 500 U.S. 352, 362-63 (1991) ("While the reason offered by the

prosecutor for a peremptory strike need not rise to the level of a challenge for cause, the

15

fact that it corresponds to a valid for-cause challenge will demonstrate its race-neutral character.") (citation omitted).

Accordingly, the prosecutor's stated rationale for striking Brown adequately met her step two burden under <u>Batson</u>.

2.      <u>Trial Court's Ruling</u>

Showers also contends that the trial court's denial of his <u>Batson</u> application constituted an unreasonable application of federal law because the court "<u>never</u> ma[de] the required explicit, individualized inquiry into the strike of Ms. Brown." (Pet.'s Mem. at 15). The record establishes, however, that the trial court carefully probed the prosecutor's reason for striking Brown. (<u>See</u> T. 266-67). Although the trial court initially expressed skepticism about the prosecutor's theory that Brown was critical of Rodriguez's attempt to stay on the jury, and therefore might be biased against the police, this does not mean that the prosecutor's alleged concern was necessarily pretextual. Nor does the court's initial reaction establish, as Showers alleges, that Justice Bernstein "passively acquiesced" after first finding the prosecutor's race-neutral explanation to be "irrational," "nonsensical," and "implausible." (<u>See</u> Pet.'s Mem. at 9, 16, 17; Pet.'s Reply at 4, 11). Rather, what the record shows is that Justice Bernstein at first did not understand the significance that the prosecutor attributed to Brown's comment. After inquiring further, the Justice accepted the prosecutor's race-neutral explanation as credible. This eventual disposition of Showers' claim was not an unreasonable application of <u>Batson</u>.

Equally baseless is Showers' claim that the trial court did not afford defense counsel an adequate opportunity to be heard. (Pet.'s Reply at 11-12). Seizing on a single line in the transcript in which Justice Bernstein said, "Okay, let's move on from there," Showers argues that the trial court unjustifiably "terminated debate" and four days later "cut off defense counsel's desire to revisit the strike of Ms. Brown."[4] (Id. at 11). He also complains that "[n]o arguments were ever heard discussing the credibility of the nonsensical justification for striking Ms. Brown." (Pet.'s Mem. at 16).

Showers' selective reading of the trial transcript mischaracterizes what occurred during this phase of jury selection. As the transcript reflects, Justice Bernstein previously had heard from the prosecutor with respect to juror Brown at the end of the fourth round of jury selection, concluding that the reasons for her peremptory challenge were race neutral. (T. 266-67). There is no indication that defense counsel was unable to make a full record during this round. Thereafter, at the conclusion of the fifth round of voir dire, the court expressly invited defense counsel to make a Batson application. (Id. at 284) ("Before we get to alternates, you want to make a Batson issue?"). In response, defense counsel stated that he still believed the prosecutor's reasons for striking Brown were pretextual and that he wished to "renew" his application with respect to four additional jurors. (Id.). After the prosecutor gave explanations for the latter challenges that the court deemed satisfactory, the prosecutor sought to revisit her reasoning regarding

---

[4] Although Showers' papers refer to the recess as lasting four days, the transcript indicates that the court recessed for only three days, adjourning on the afternoon of Thursday, March 9, 2000, and resuming on Monday, March 13, 2000. (See T. 197, 291-92).

juror Brown.  Justice Bernstein responded that he would "stick with [his] opinion as to

. . . Brown" and then expressed a desire to move on.  (Id. at 287).  Thus, in context, it

seems clear that the Justice was curtailing a further repetitive proffer by the prosecutor,

not seeking to silence defense counsel.  Indeed, when the Justice indicated that he wished

to proceed with jury selection, Showers' counsel did not utter so much as a syllable

suggesting that there was anything that he wished to add.

After a three-day weekend recess, Justice Bernstein supplemented his prior

statements by indicating that he had found the prosecutor's reasons for exercising her

challenges were not only race neutral but "class neutral."  (Id. at 292).  These additional

findings were made in response to Showers' prior objection that the People were striking

young jurors.  (Id. at 292-93).  Although the Justice indicated that the jury was "coming

up" and that jury selection was moving "very quickly," (id. at 293), there once again is

not the slightest suggestion that he sought to restrict any arguments that defense counsel

wished to make at this stage.

Showers' reliance on Jordan v. LeFevre, 206 F.3d 196 (2d Cir. 2000), and

Hughes v. Mitchell, No. 98 Civ. 2854 (LMM), 2004 WL 1794506 (S.D.N.Y. Aug. 11,

2004), consequently is misplaced.  In Jordan, the trial court "resisted counsel's efforts to

make arguments regarding the peremptory strikes so as to create a full record."  Jordan,

206 F.3d at 201.  Similarly, in Hughes, the trial court "simply ruled in the prosecutor's

favor, without allowing defense counsel to explain why the prosecutor's (presumed)

reasons should be regarded as pretextual."  Hughes, 2004 WL 1794506, at *4.  Here, by

comparison, rather than resisting defense counsel's efforts to argue pretext, the trial court expressly invited defense counsel to put his application on the record. (See, e.g., T. 284). In light of this invitation, any suggestion that Showers' counsel was precluded from making an adequate record regarding his Batson claim is sheer speculation.

Showers also objects that the trial court did not rule in a timely manner with respect to the credibility of the prosecutor's race-neutral justification for striking Brown. (Pet.'s Mem. at 16-17; Pet.'s Reply at 12). During the course of jury selection, however, Justice Bernstein expressly stated that the prosecutor had proffered race and class neutral reasons for her peremptory challenges and that those reasons "were not pretextu[]al." (T. 292-93). This plainly was a sufficient finding to meet the court's obligation at step three of the required Batson analysis. Additionally, the court's finding was made while jury selection was underway and, therefore, was timely.

This case consequently is distinguishable from Barnes v. Anderson, 202 F.3d 150 (2d Cir. 1999), Rose v. Senkowski, No. 99 CV 6053, 2003 WL 21698240 (E.D.N.Y. July 8, 2003), and Galarza v. Keane, 252 F.3d 630 (2d Cir. 2001), three cases which Showers contends establish the inadequacy of Justice Bernstein's findings. (See Pet.'s Mem. at 13-17).

In Barnes, which was a civil case, plaintiff's counsel made two Batson motions. In response to the first such motion, the district judge stated that defense counsel had provided a "sufficient reason" and "I don't find it pretextual." Barnes, 202 F.3d at 156. The Second Circuit clearly found this ruling adequate to meet the court's

obligation at the third step of Batson since it held that if this were the full extent of the Batson issue, "the only question . . . would be whether the district court erred in finding defendants' explanation credible, a finding entitled to 'great deference.'" Id. (citing Batson, 476 U.S. at 98 n.21). In response to the plaintiff's second Batson motion, however, the district judge observed, "I find that the reason given is sufficient to take it out of the realm of race." Id. at 157. The district judge went on to state, "I won't rule on credibility of attorneys right now myself . . . . I am not stating whether or not I buy all of your [race-neutral explanations]." Id. (emphasis added). Based on these last observations, the Second Circuit concluded that it could not "square the district court's explicit refusal to rule on the credibility of either attorney's explanation with the court's duty under the third step of Batson." Id. (emphasis added). However, reconsideration of the trial judge's prior reasoning was not feasible because he died after the trial. Accordingly, the case was remanded for a new trial. Id.

In Rose, as defense counsel was attempting to argue that the prosecutor's reasons were pretextual, the prosecutor interrupted to ask the trial court whether it was entertaining the Batson motion. The judge responded, "He's making his record. I'm not entertaining anything. He's entitled to make a record." Rose, 2003 WL 21698240, at *7. After that record was made, the judge completed jury selection without ruling on the defense's claim of pretext. Id. On habeas review, the case was remanded for a reconstruction hearing so that the trial court could determine the credibility of the prosecutor and the reasoning of the trial court. Id. at 15.

In Galarza, the trial court similarly failed to rule on the credibility of the prosecutor's explanation for two of five peremptory challenges, stating, "Since I am satisfied [that] at least three of them have certain articulable [sic] reasons, I am not going to stop the trial." Galarza, 252 F.3d at 639. Given this undisputed failure to complete the required analysis, the Second Circuit held that the district court either would have to expand the record on its own to resolve the petitioner's claims or issue a conditional writ returning the matter to the state court for reconsideration. Id. at 640.

In this case, unlike the three cases cited by Showers, the trial court did not refuse to decide whether the prosecutor's proffered race-neutral explanation was pretextual. Rather, after hearing from the prosecutor, the judge explicitly stated that the reasons she had advanced "were not pretextu[]al." (T. 293). There consequently is no basis for Showers' contention that Justice Bernstein failed to complete step three of the required Batson analysis.

There also is no basis for Showers' contention that the "catch-all" nature of Justice Bernstein's ruling violates Barnes, which, according to Showers, requires "individualized" credibility rulings at step three. (Pet.'s Mem. at 17). Indeed, in Barnes, the Second Circuit found that the trial court's first Batson ruling, which was virtually indistinguishable from Justice Bernstein's ruling here, was sufficiently explicit to sustain two of the defense's peremptory challenges. See Barnes, 202 F.3d at 156 ("You [defendants' counsel] stated in summary a sufficient reason. I don't find it pretextual.") (alteration in original).

More recently, the Second Circuit has affirmed an even less explicit "catch-all" ruling in <u>Messiah v. Duncan</u>, 435 F.3d 186, 199 (2d Cir. 2006). There, the trial court stated only, "That's five, five by the People," referring to the prosecutor's prior use of five peremptory challenges. Although the statement did not make any reference to the credibility of the prosecutor's proffered reasons, the Second Circuit found it "evident that the trial judge did not discredit or find unpersuasive the prosecutor's race-neutral explanations for striking [the prospective juror]," and that this therefore was "a succinct but adequate <u>Batson</u> ruling." <u>Id.</u> If statements such as the ones made by the trial judges in <u>Barnes</u> and <u>Messiah</u> are sufficient to meet a trial court's obligations with respect to step three of <u>Batson</u>, Justice Bernstein's ruling here, which expressly indicated that the reasons proffered by the prosecutor for her peremptory challenges were not pretextual, obviously passes muster.

Finally, Showers complains that the trial court's finding that the prosecutor's reasons were not pretextual was first made "four days after" Brown was peremptorily challenged. (<u>See, e.g.</u>, Pet.'s Mem. at 16-17; Pet.'s Reply at 2-4). Showers characterizes the ruling as an "untimely attempt to tidy up the record." (Pet.'s Reply at 3). The record establishes, however, that the prosecutor exercised her peremptory challenge with respect to Brown late on a Thursday, after which the trial was recessed for three days. The following Monday, when jury selection resumed, the court began the proceedings by ruling that the prosecutor's stated reasons for her challenges were race and class neutral and not pretextual. (<u>See</u> T. 292-93).

In <u>United States v. Joe</u>, 928 F.2d 99, 103 (4th Cir. 1991), the Fourth Circuit criticized a district court's decision to deter ruling on a <u>Batson</u> motion until after the completion of the <u>trial</u> because the court was "no longer in a position to cure the violation during the jury selection process should a violation have occurred." <u>Accord</u> <u>United States v. Brisk</u>, 171 F.3d 514, 523 (7th Cir. 1999) ("[W]e agree with the Fourth Circuit that delaying a <u>Batson</u> ruling until the end of trial is ill-advised."). Here, however, the trial court considered Showers' <u>Batson</u> application regarding Brown no less than three times during the course of jury selection. (<u>Id.</u> at 266-67, 286-87, 292-93). Additionally, it is clear that Justice Bernstein had made an express step three ruling by the time jury selection concluded. Showers therefore has not shown that Justice Bernstein's rulings were untimely. In fact, Showers has not cited any authority – much less Supreme Court case law – to support his claim that a trial court must make its <u>Batson</u> rulings at the time that the exercise of a peremptory challenge is contested. Showers consequently has not shown that he is entitled to habeas relief based on the trial court's handling of his <u>Batson</u> objection regarding Brown.

IV.     <u>Conclusion</u>

For the foregoing reasons, Showers' habeas petition should be denied. Additionally, because Showers has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should not be issued.

V.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable William H. Pauley III, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Pauley. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:    New York, New York
          April 29, 2008


_____
          FRANK MAAS
     United States Magistrate Judge

Copies to:

Eunice Lee, Esq.
Office of the Appellate Defender
11 Park Place, Suite 1601
New York, New York 10007

Clifford Chance US LLP
31 West 52nd Street
New York, New York 10019

Christopher J. Blira-Koessler, Esq.
Assistant District Attorney
District Attorney's Office, Bronx County
198 East 161st Street
Bronx, New York 10451